428 P.2d 744

**MOUNTAIN HOME REDI-MIX, a partnership consisting of Earl D. Dodge, Clifford Johnson and Woodrow Johnson, Plaintiff-Appellant,**

v.

**CONNER HOMES, INC., a corporation et al., Defendants-Respondents.**

No. 9768.

Supreme Court of Idaho.

May 31, 1967.

Hall & Rowett, Mountain Home, for appellant.

Davison, Davison & Copple, Boise, for respondents.

McQUADE, Justice.

Between April 17 and September 26, 1962, Mountain Home Redi-Mix, appellant, furnished concrete to a twenty-one house building project in the Baker Second Subdivision at Mountain Home, Idaho. The builder, Conner Homes, Inc., an Oregon corporation which never qualified to operate as a corporation in Idaho, contracted

for the concrete through its managing officer, Joe Conner. Construction of the twenty-one houses was financed through Mortgage Insurance Corp. (M.I.C.), a respondent, which was the beneficiary under deeds of trust for each piece of property. John Caldwell, also a respondent, at all pertinent times was an officer of Conner Homes and owned nearly half of its capital stock.

When appellant first delivered concrete to this project, Conner Homes and respondent Caldwell owed appellant $5,826.51 for concrete furnished an earlier enterprise. Conner Homes, in the contract signed by Joe Conner for the new project's concrete, had agreed that money earned from the new project could be applied according to a schedule written on the contract's reverse side in satisfaction of this pre-existing debt. The contract contained a blank space for acceptance by M.I.C., but this was never executed and the trial court determined that appellant did not prove that M.I.C. knew of the agreement.[1]

From time to time, M.I.C. released monies from its building loans upon receiving inspection reports that construction at certain stages had been satisfactorily completed. Payments for concrete were made by M.I.C. directly to appellant by checks which all bore the following: "WHEN DETACHED AND PAID THE ABOVE CHECK BECOMES A RECEIPT IN FULL PAYMENT OF THE FOLLOWING ACCOUNT." Each check receipt then listed by block and lot number, one or more of the twenty-one houses in the project.

The concrete which appellant supplied for the project had a total price of $16,138.80 and M.I.C. paid appellant $11,598.24 by issuance of the described checks, so that a balance of $4,540.56 would remain. Appellant, however, applied $5,826.51 from M.I.C.'s payments to the prior debts owed it by Conner Homes and Caldwell. Appellant claims this application was proper and thus that $10,367.07 is still owing from M.I.C. for the concrete supplied the project.

On November 3, 1962, appellant filed a claim of materialman's lien, I.C. §§ 45–501 et seq., for $10,367.07, against the twenty-one lots and their improvements. By check dated January 4, 1963, M.I.C.'s successor with respect to the property, Continental Lumber Co., tendered $4,540.56, the contract price less M.I.C.'s previous payments to appellant, in order to have the lien removed. Appellant refused the tender and brought this suit to foreclose its claim and for personal judgment in the sum of $10,367.07 against Conner Homes and personal judgments in that amount against Joe Conner and against John Caldwell as officers contracting in Idaho for a non-qualifying foreign corporation.

The trial court granted personal judgment by default against Conner Homes but no judgment against Joe Conner over whom, the court found, it had not acquired jurisdiction due to defective service. Neither determination is challenged on this appeal.

The trial court, determining that appellant had had no right to apply funds received from M.I.C.'s construction loans in satisfaction of the prior debts of Caldwell

1. In a memorandum decision the trial court stated:

"* * * the evidence is entirely inadequate to establish that the arrangement between Conner and plaintiff as to application of the payments to the prior indebtedness was ever communicated to M.I.C. or that it ever had knowledge of such arrangement, much less that it agreed thereto. There is no evidence that M.I.C. ever received a copy of the contract (Plaintiff's Exhibit No. 4) with the payment schedule thereon allocating a portion of the payment to the prior debt. * * * I am unable to find that M.I.C. had agreed to the application of payments being made by the plaintiff to the prior debts or had any knowledge thereof."

In its findings of fact the court said:

"* * * the defendant Mortgage Insurance Corporation did not agree to the application of the payments to the prior debts, nor did said defendant have any knowledge of said application."

and Conner Homes, also found that the amount tendered was the full balance due from the owners of the twenty-one lots, and therefore that the lien claim against this property had been extinguished by the tender prior to commencement of the present action. The court also found that respondent Caldwell was not subject to personal judgment. Appellant contests the judgment and decree based upon these findings.

■ The trial court found the evidence insufficient to establish that M.I.C. had notice or knowledge of Conner Homes' agreement permitting appellant to apply proceeds of construction loans from the twenty-one house project in satisfaction of Conner Homes' pre-existing debt. This finding is supported by substantial evidence and will not be disturbed. See Layrite Products Co. v. Lux, 91 Idaho 110, 416 P.2d 501 (1966). Appellant, on the other hand, knew of each payment's source—the project's construction loans, and its intended purpose, since all payments were by M.I.C. checks attached to statements of the account paid by block and lot number. This knowledge obligated appellant to apply the payments appropriately and protect the interest of the source from which the funds were received. See Jackson v. A.B.Z. Lumber Co., 155 Colo. 33, 392 P.2d 288 (1964); Restatement, Contracts §§ 388 and 389(e) and Illustration 6 to § 389; 57 C.J.S. Mechanics' Liens § 249; cf. Goss v. Iverson, 72 Idaho 240, 238 P.2d 1151 (1951). A contrary rule would subject property whose owner had once paid for materials used in its improvement to a secured claim for payment of the same debt which the owner has in truth already satisfied.

■ The trial court thus properly found that appellant did not hold a valid lien against the project after refusal to accept M.I.C.'s successor's tender.

Appellant also contends that its contract with Conner Homes, allowing application of M.I.C.'s construction loan funds in satisfaction of a pre-existing debt, personally binds John Caldwell.

Before doing business in Idaho, a foreign corporation must file a certified copy of its articles of incorporation in the offices of Idaho's secretary of state and the recorder of the county in which is designated the corporation's principal place of business in this state. I.C. § 30–501. No more than three months after commencing business here, the corporation must also file, in the same offices, designations of an agent in its principal county who will receive legal process. I.C. § 30–502. Under § 30–508,

"Any and all officers, agents and representatives of said corporation, * * * who shall make or attempt to make any contract or agreement * * * in the name of such corporation, or for its use and benefit, before such original filings [those required by I.C. §§ 30–501 and 30–502] are made, * * * shall be, jointly and severally, personally liable upon and for all such contracts and agreements as principal contractors."

Appellant argues that this statute personally obligates Caldwell, an officer, for the contract signed by Joe Conner on behalf of Conner Homes, a foreign corporation which did not comply with I.C. §§ 30–501 and 30–502, so that Caldwell remains responsible for the full price ($16,138.80) less amounts actually applied by appellant to charges for concrete used on the project ($5,771.73), in sum, $10,-367.07.

■ By the operative terms of I.C. § 30–508, "Any and all officers, agents and representatives * * * who shall make * * * any contract * * * in the name of such corporation, * * * shall be * * * personally liable upon all such contracts." Although this Court has considered the statute but once, in a decision not relevant to the present question,[2] never-

---

2. Dietrich v. Copeland Lumber Co., 28 Idaho 312, 154 P. 626 (1916), which regarding I.C. § 30–508 (then R.C. § 2792) held only that for purposes relating to statutes of limitations it imposes statutory liability.

theless, the language and manifest intent of I.C. § 30–508 clearly refutes appellant's argument. Caldwell admittedly took an active interest in Conner Homes, Inc., and had authorized Joe Conner to manage its general affairs but he, Caldwell, did not participate in the contract's negotiations, was not present when Conner signed the contract and never ratified it. Caldwell, therefore, did not "make" the contract in a sense in which the word is normally understood. The statute's specific intent is further illustrated by its treatment of a corporation's "agents and representatives" on the same footing with its officers. Cf. I.C. §§ 30–501 et seq.; Idaho Const. art. XI, § 10; Burley Newspapers, Inc. v. Mist Publishing Co., 90 Idaho 515, 414 P.2d 460 (1966); see also Note, Sanctions For Failure To Comply With Corporation Qualification Statutes: An Evaluation, 63 Colum.L.Rev. 117, 124 (1963).

More generally, it should be considered that appellant believed the corporation was the only other party to the agreement, for the contract was signed "Conner Homes [,] Inc. BY Joe Conner [,] pres." Had the corporation simply filed the required papers (and there is no suggestion that its failure was deliberate), appellant could look no further than the corporation's assets for satisfaction of the contract. The statute extends liability beyond the corporation, but only to one who "makes" the contract, thus obliging, as an alternative source of recovery, those with whom the other party has personally dealt. See Shawmut Commercial Paper Co. v. Auerbach, 214 Mass. 363, 101 N.E. 1000 (1913); Richmond Standard Steel, Spike & Iron Co. v. Dininny, 105 Va. 439, 53 S.E. 961 (1906); Annot., 51 A.L.R. 376, 388 (1927); see generally Note, 63 Colum.L.Rev. 117, 123 (1963); 17 Fletcher, Cyclopedia of Corporations § 8525 (rev. ed. 1960); see also ABA-ALI Model Bus.Corp.Act § 117, ¶ 2.02 (7) (1960 and Supp.1966).

Appellant's claim for personal judgment against Caldwell is grounded only on I.C.

§ 30–508. The trial court properly found that the statute must not be so construed.

Judgment affirmed. Costs to respondents.

TAYLOR, C. J., and SMITH, McFADDEN, and SPEAR, JJ., concur.