174 P.3d 399

**BMC WEST CORPORATION,**
**Plaintiff–Respondent,**

**v.**

**James H. HORKLEY and Joe's Filing**
**Station, L.L.C., Defendants–**
**Appellants.**

**No. 33140.**

Supreme Court of Idaho,
Idaho Falls, October 2007 Term.

Dec. 5, 2007.

Swafford Law Office, Chartered, Idaho Falls, for appellant. Ronald L. Swafford argued.

Justin R. Seamons, Idaho Falls, for respondent. Justin R. Seamons, argued.

W. JONES, Justice.

James Horkley and Joe's Filling Station, LLC (Horkley) hired Davies to construct two buildings in Rexburg, Idaho: a restaurant building and an insulated storage building. On an open account, Davies purchased materials from BMC West Corporation (BMC) to use for the project. Davies had opened an account with BMC on October 1, 1988, and BMC closed the account in August 2005. BMC acknowledges that Horkley paid Davies $111,335.91, of which $101,419.41 was for the restaurant and insulated storage building. Of the $101,419.41, Davies charged Horkley $27,992.48 for BMC materials furnished for the project as of January 29, 2005. For the subsequently purchased BMC materials, Davies charged Horkley $1,817.05. So, Davies charged Horkley a total of $29,809.53 for materials purchased from BMC.

In addition, Davies billed Horkley for substantial materials and rental costs from other suppliers separate from the materials purchased from BMC. On Davies' bills to Horkley, he identified the source of each particular charge. So, one could identify both the total amount Horkley was charged for BMC materials and the amount he was charged for materials or supplies purchased from others. Davies did not fully pay for the materials purchased from BMC. As a result, under I.C. § 45–501 and I.C. § 45–505, BMC filed liens on the land on which the buildings were located, and on the buildings themselves. Finally, BMC requested relief in the form of $10,471.80 for the balance on the account, and foreclosure on the liens. In his answer, Horkley opposed BMC's claims for relief. BMC then filed a motion for summary judgment on January 23, 2006, and Judge Moss granted the motion on March 21, 2006. On May 15, 2006, Judge Moss entered a judgment and decree of foreclosure in favor of BMC. From this decision, Horkley appeals to this Court.

The relevant payments from Horkley to Davies took place as follows:

09/10/04: $9,916.50 for the foundation for the buildings. BMC argues that this payment was for a separate project, even though the buildings were constructed atop the foundation, and Horkley does not dispute BMC's argument.

12/16/04: $35,000.00. Davies' bill to Horkley indicates that this $35,000.00 was "paid down," i.e., a down payment.

02/02/05: $56,000.00.

02/17/05: $10,419.41.

*Total:* $101,419.41 ($111,335.91 counting the inapplicable $9,916.50 from 09/10/04 for the foundation).

Davies' payments to BMC occurred as follows:

09/03/04: $2,600.00.

09/30/04: $2,700.00.

10/28/04: $3,000.00.

11/30/04: $23,000.00.

01/31/05: $25,000.00.

*Total:* $56,300.00.

Davies submitted the first bill to Horkley on January 31, 2005. The bill stated that it represented charges "as of" January 29, 2005. At that time, Horkley had amassed $101,419.41 worth of labor and materials charges. The bill's total, though, was only $66,419.41, because Horkley was credited $35,000.00 for his December 16, 2004 down payment. Construction was not complete by January 31, 2005 (the date of the first bill). Instead, construction was completed several months later on April 27, 2005. Because additional work took place between January 29, 2005 (the date of the charges on the first

bill) and April 27, 2005 (the date of completion), Horkley accumulated additional charges. Therefore, Davies sent Horkley a second bill on or about May 3, 2005, for approximately $29,809.53. Horkley objected to the amount he was charged for Davies' labor, and Davies agreed to reduce the bill to $21,452.24. Horkley denied that he owed Davies $21,452.24, and stated that he "would not pay any further amounts to him without supporting documentation and information."

■ The legal framework for our review of BMC's action against Horkley is outlined as follows. Because Horkley appeals from BMC's successful motion for summary judgment, we review this case under the standards governing review of motions for summary judgment. Under I.R.C.P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment faces the burden of proving the absence of material facts *Tingley v. Harrison*, 125 Idaho 86, 89, 867 P.2d 960, 963 (1994), but if "a party moves for summary judgment on the basis that no genuine issue of material fact exists with regard to an element of the non-moving party's case, the non-moving party must establish the existence of an issue of fact regarding that element." *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 273, 869 P.2d 1365, 1368 (1994). In other words, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial." *Id.* (internal quotations omitted).

■ Moreover, the non-moving party cannot withstand summary judgment when there is only a "slight doubt as to the facts," as "there must be sufficient evidence upon which a jury could reasonably return a verdict resisting the motion." *Harpole v. State*, 131 Idaho 437, 439, 958 P.2d 594, 596 (1998). Finally, "[a]ll disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Bear Island Water Association, Inc. v. Brown*, 125 Idaho 717, 721, 874 P.2d 528, 532 (1994).

■ "The right of a materialman to assert a lien against a structure for which materials have been furnished is a right granted and therefore determined by statute." *Layrite Products Co. v. Lux*, 91 Idaho 110, 113, 416 P.2d 501, 504 (1966). In Idaho, the right exists in I.C. §§ 45–501 and 505. Section 45–501 states in relevant part that "[e]very person performing labor upon, or furnishing materials to be used in the construction, alteration or repair of any . . . building . . . or any other structure . . . or who . . . improves any land . . . has a lien upon the same for the . . . materials furnished. . . ." Section 45–505 provides:

> The land upon which or in connection with which any . . . building, improvement or structure is constructed, together with a convenient space about the same, or so much as may be required for the convenient use and occupation thereof, to be determined by the court on rendering judgment, is also subject to the lien, if, at the commencement of the furnishing of professional services or other work, [or] the furnishing of the material . . . the land belonged to the person who caused said . . . building, improvement or structure to be constructed, altered or repaired, or such person was acting as the agent of the owner, but if such person owns less than a fee simple estate in such land, then only the interest of the person or persons causing the services or improvement therein is subject to such lien.

■ "The purpose of these statutes is to compensate persons who perform labor upon or furnish material to be used in construction, alteration or repair of a structure." *Franklin Building Supply Co. v. Sumpter*, 139 Idaho 846, 850, 87 P.3d 955, 959 (2004). Materialman's lien laws are construed liberally "in favor of the person who performs labor upon or furnishes materials to be used in the construction of a building." *Id.* "To create a valid lien, there must be substantial

compliance with the requirements of the statutes." *Id.*

"Statutes such as the Idaho provision which permit a lien for materials furnished usually apply only to furnishing for building purposes, and do not include a furnishing for general or unknown purposes ... or on a general open account." *Layrite,* 91 Idaho 110, 113, 416 P.2d 501, 504. The "open account defense" is applicable "in situations when a person furnishing materials relies exclusively on the general credit of the purchaser, and does not look to the land, structure or building as additional security for the materials sold on credit." *Great Plains Equipment, Inc. v. Northwest Pipeline Corp.,* 132 Idaho 754, 772, 979 P.2d 627, 645 (1999). In such a case, the materialman is not entitled to a lien. *Id.* In addition, the lien statutes do not apply to "a sale without any reference as to what shall be done with the material sold." *Layrite,* 91 Idaho 110, 113, 416 P.2d 501, 504.

So, to secure the protection of a mechanic's lien law, "[m]aterials must be furnished with special reference to their use in a particular building." *Colorado Iron Works v. Riekenberg,* 4 Idaho 705, 710, 43 P. 681, 683 (1896). Therefore, "a mere furnishing for building purposes generally is not sufficient." *Layrite,* 91 Idaho 110, 114, 416 P.2d 501, 505. As a result, "if a materialman sells his materials without any understanding as to their application the materialman can assert no lien upon the building upon which the materials may, in fact, be used." *Id.* However, "[w]here materials are furnished for use in a particular building, the fact that the materialman looks first or primarily to the contractor for payment and only subsequently to the building for security, would not of itself defeat the lien." *Id.*

Horkley argues that BMC's lien is invalid because BMC sold the building materials to Davies on an open account and therefore did not satisfy the requirement that BMC specifically refer to the materials' purpose. To support his claim that BMC purchased materials on an open account, Horkley notes that BMC applied Davies' payments with a "first in first out" (FIFO) method. BMC admits both that Davies had an open account with BMC, and that Davies' payments were applied on a FIFO basis. It denies, however, that these concessions result in an enforceable defense for Horkley.

BMC is correct. The open account defense is inapplicable here, because BMC did not rely exclusively on Davies' general credit. BMC submitted evidence that its general practice was to place a lien on the property built by the contractor when the contractor failed to pay for the purchased materials. Of course, if BMC places a lien on that property, it is not relying exclusively on the general credit of the purchaser. Horkley's only countervailing evidence is that BMC applied Davies' payments on a FIFO basis. That fact, though, serves only to support precisely what BMC admits: that Davies' payments were credited on an open account. But, as established, there exists no genuine issue as to whether the open account defense is inapplicable here, because Horkley has failed to present evidence to support the applicability of the open account defense. Instead, he only presented evidence that an open account exists, and that fact alone does not establish a defense.

A defense would be established if BMC sold the materials without reference to the project for which they were used. BMC cited evidence contradicting this defense, though. Glenda Kamachi, the credit manager of BMC, testified that BMC customers must identify their projects on a "ship to" section on BMC's invoices. She further testified that Davies placed the name "Horkley" in this section, and that BMC's purpose in ascertaining this information was to inform BMC as to the particular projects for which the materials were purchased. Nevertheless, Horkley suggests that it can defend on the basis that materials were furnished without referencing a particular project, because "many invoices in the record ... have no reference to a particular project." But this evidence is enormously insufficient to meet the standard of review for summary judgment. The fact that "many invoices" do not reference the Horkley project provides nowhere near the amount of evidence necessary for a jury to "return a verdict resisting the motion." This evidence serves only as a

trivial observation, given that a review of the record demonstrates that the *vast* majority of the invoices do reference the Horkley project. Additionally, it is clear that in discovery Horkley requested all invoices from BMC for a particular time period, not just those from the Horkley job. So, it is not surprising that there are invoices in the record that do not pertain to Horkley.

The fact of the matter is that this case is fairly straightforward. Idaho Code § 45–501 provides a lien to "[e]very person ... furnishing materials to be used in the construction, alteration or repair of any ... building ... or any other structure...." BMC furnished materials for the construction of the Horkley project; therefore, it is entitled to a lien on the buildings that that project produced. Since it has not received full payment, and since Horkley's defenses fail, BMC has the right to foreclose on the lien.

 Next, Horkley claims that BMC's lien is not valid because Horkley satisfied his obligation to Davies. This contention is based on the principle that one's property should not be subject to a lien for a satisfied debt. Horkley cites a single, readily distinguishable case in support of his position: *Mountain Home Redi–Mix v. Conner Homes, Inc.*, 91 Idaho 612, 428 P.2d 744 (1967). *Redi–Mix* held that a materialman's lien is invalid when, among other things, (1) the materialman knew of the payment's source and the relevant project's purpose, and (2) the property owner had paid for materials that nevertheless would still be subject "to a secured claim for payment of the same debt which the owner has in truth already satisfied." *Redi–Mix*, 91 Idaho 612, 614, 428 P.2d 744, 746.

Redi–Mix is distinguishable first because BMC (the materialman) was not aware that Horkley was the source of Davies' payments, since Horkley *wasn't* the source. At the time BMC accepted Davies' payments, Horkley had yet to make any payment to BMC or Davies. BMC cannot be faulted for failing to credit the Horkley account, when Horkley was not the source of Davies' payment to BMC. The following side-by-side comparison

of payments reveals that Horkley could not possibly have been the source of Davies' payments to BMC with the possible exception of Horkley's down payment of $35,000. Davies made no payments to BMC after January 31, 2005. Both of Horkley's last two payments to Davies were after that date:

| Davies' Payments to BMC | Horkley's Payments to Davies |
| --- | --- |
| 09/03/04: $ 2,600 | None |
| 09/30/04: $ 2,700 | None |
| 10/28/04: $ 3,000 | None |
| 11/30/04: $23,000 | None |
| 12/16/04: None | $35,000 |
| 01/31/05: $25,000 | None |
| 02/02/05: None | $56,000 |
| 02/10/05: None | $10,419.41 |

Secondly, the key concern in the *Redi–Mix* case was that an innocent property owner could be subjected to a lien on property for which he already has paid. Here, however, Horkley remains in arrears on his debt to Davies. Horkley owed $66,419.41 for work performed as of January 29, 2005, and he duly paid that debt through his two February, 2005 payments. Since that time, though, he has paid nothing. In fact, he admitted that he has not paid, and that he will continue not to pay Davies, even though BMC has cited scores of post-January 29 invoices referencing the Horkley project. BMC clearly furnished materials to Davies for use on the Horkley project, for which BMC has not been paid by anybody. In *Redi–Mix*, on the other hand, the owner was in danger of being subjected to a lien of an amount greater than he owed.[1] 91 Idaho 612, 613, 428 P.2d 744, 745.

Horkley remains persistent, however, citing a litany of cases from other jurisdictions generally supporting the proposition that the equities favor a rule that would not require a property owner to pay twice for his property. Unfortunately for Horkley, though, he persistently cited irrelevant and distinguishable cases. In the cited cases, it may have been the case that the equities favored such a rule, but the facts here do not present reason to consider adopting the rule. The bottom line in the present case is that it is undisputed that even though Horkley paid a total of $101,419.41 to Davies, not all of those pay-

**1.** The balance owed was $4,540.56, yet the lien was for $10,367.07.

ments were for materials. Davies' bill included labor and other charges as well. Although Horkley argues that he paid Davies more than the total amount of the materials, that is not the issue in the present case, since as already noted, Davies had many other expenses also to pay from the payments he received from Horkley. The issue here is that BMC was not paid and that BMC tracked the use of the materials to the project on which they were used. Those facts trigger Idaho's materialman lien statutes, which provide BMC a right to a lien on the materials and property.

In the present case, BMC identified the Horkley project with respect to the overwhelming number of invoices for materials sold. Davies' itemized bills provided Horkley notice of the source of the materials furnished for the project. It should not be forgotten that it was readily within the power of Horkley to protect himself against any unwanted lien by making his payments to Davies contingent upon Davies providing a lien release from BMC, or only making his payments to Davies by a check payable both to Davies and BMC. His failure to do so should not preclude BMC from exercising its rights under the lien statutes to protect itself when making credit sales while relying both upon the credit reliability of the contractor as well as the security in the materials sold by tracking them to the project on which they were used.

 Horkley next claims that the last relevant invoice was dated March 30, 2005, whereas BMC maintains that the last invoice was dated April 27, 2005. This issue is relevant because Idaho Code § 45–507(2) requires that a person claiming a lien file "within ninety (90) days after the completion of the labor or services, or furnishing of materials." The lien was filed on July 22, 2005. The issue turns on whether the insulated storage building was part of the same project as the restaurant construction.

Horkley argues that it was not, because it was portable and merely chattel placed on the land. However, Horkley cites no authority for the proposition that chattel cannot qualify under I.C. § 45–501 as furnished materials to be used in "the construction, altera-

tion or repair of any ... building ... or any other structure" or an improvement on land. Nevertheless, BMC persuasively argues that the building is not chattel. Davies testified that it was built for the particular location where it sits, as is evidenced by the fact that it sits on a foundation and possesses the unique feature of being sloped both to the west and to the south. The building therefore is not chattel. In addition, it clearly was built for the purpose of complementing the restaurant: it was constructed of the same colors and with the same design. It qualifies as an "improvement" on the land, allowing it to fall under I.C. § 45–501.

 It also is not relevant—contrary to Horkley's differing contention—that the insulated storage building was constructed on a third party's land. Here, the relevant third party is Eastern Idaho Railroad, which possessed a right of way on the relevant land, while Horkley had no property interest in the land. "Idaho's materialman's lien statutes appear to have been adopted from those of California." *Chief Industries, Inc. v. Schwendiman*, 99 Idaho 682, 687, 587 P.2d 823, 828 (1978). So, the following language from a California case is useful: "the lien upon [a] building exists separately from the land." *English v. Olympic Auditorium*, 217 Cal. 631, 20 P.2d 946, 950 (1933). In other words, a lien is not destroyed by the fact that the liened building sits upon the land of a third person.

The fact that the lien can attach to improvements to land owned by third persons is suggested by the language of I.C. § 45–505, which states that "... if such person owns less than a fee simple estate in such land, then only the interest of the person or persons causing the services or improvement therein is subject to such lien." Because the storage building sits on land in which Eastern Idaho Railroad has a property interest, the lien attaches only to the building or such property interest as is owned by Horkley.

 Next, since Kamachi, the agent of BMC, typed her name rather than signing it, Horkley argues that the lien was not properly verified by oath. Idaho Code § 45–507 requires that claims of lien "be verified by

the oath of the claimant, his agent or attorney, to the effect that the affiant believes the same to be just." Black's Law Dictionary (8th ed.2004) defines "verification" as a "formal declaration made in the presence of an authorized officer, such as a notary public...." Kamachi was "sworn upon oath" by a notary public. Idaho Code § 45–507 does not state that the lien must be signed; it only states that it must be verified by the oath of the claimant. Because Kamachi was given an oath by a notary public, and because a signature is not explicitly required, her typewritten name suffices. Kamachi's verification therefore was not defective.

Finally, BMC requests costs and attorney's fees on appeal. Idaho Appellate Rule 40(a) states that "Costs shall be allowed as a matter of course to the prevailing party unless otherwise provided by law or order of the Court." Idaho Code § 45–513 provides for attorney's fees in lien cases, stating that "Any number of persons claiming liens against the same property may join in the same action, and when separate actions are commenced the court may consolidate them. The court shall also allow as part of the costs the moneys paid for filing and recording the claim, and reasonable attorney's fees."

For the foregoing reasons, the district court's judgment is affirmed and costs and attorney's fees are awarded to BMC.

Chief Justice EISMANN, Justices BURDICK, J. JONES and HORTON concur.