# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37170

HOPKINS NORTHWEST FUND, LLC, an Idaho limited liability company, ) ) )

    Plaintiff-Respondent, )

v. )

LANDSCAPES UNLIMITED, LLC, a Nebraska limited liability company, ) )

    Defendant-Appellant, )

and )

GREGORY O. BULLOCK and JEANETTE E. BULLOCK, husband and wife; HUNTER'S POINT DEVELOPMENT CORPORATION, an Idaho corporation; HUNTER'S POINT GOLF COMMUNITY, LLC, an Idaho limited liability company; LANCO, INC., an Idaho corporation; BEUS EXCAVATION, LLC, an Idaho limited liability company, ADVANCED CONCRETE, INC., an Idaho corporation; BUILD 4 U, INC., an Idaho corporation; KMO, INC., an Idaho corporation; MATZDORFF RESOURCES, LLC, an Idaho limited liability company, d/b/a MIKE'S SAND & GRAVEL; and THE CITY OF NAMPA, IDAHO, an Idaho municipality, )

    Defendants.

Idaho Falls, August 2011 Term

2011 Opinion No. 103

Filed: November 1, 2011

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Honorable Gregory M. Culet, District Judge.

The judgment of the district court is <u>vacated</u> and the case is <u>remanded</u>.

Racine Olson Nye Budge & Bailey, Chtd., Pocatello, for appellant. John R. Goodell argued.

Trout Jones Gledhill Fuhrman & Gourley, P.A., and Holland & Hart, LLP, Boise, for respondent. Robert A. Faucher argued.

———————————

J. JONES, Justice.

This is an appeal from a summary judgment against Landscapes Unlimited, LLC (LU) in which the district court: (1) applied I.C. § 45-508 to postpone LU's lien claim in golf course property to Hopkins Northwest Fund, LLC's (Hopkins) deed of trust covering the same, and (2) alternatively apportioned LU's lien amount. Because we find that I.C. § 45-508 is inapplicable to LU's lien claim and that equitable apportionment is not an appropriate alternative remedy where I.C. § 45-508 does not apply, we vacate the judgment and remand for further proceedings.

## I.
## FACTUAL AND PROCEDURAL HISTORY

Hunter's Point Development is a two-part development, consisting of a residential community and a golf course, located within the city limits of Nampa, Idaho. The residential portion of the development is owned by Hunter's Point Development Corporation (HPDC), whereas Hunter's Point Golf Course is owned by Hunter's Point Golf Community, LLC (HPGC). Gregory Bullock is the managing member of HPGC and the president of HPDC.

Hopkins entered into a master credit agreement with HPGC, HPDC, and Gregory and Jeanette Bullock in August 2006. Pursuant to the agreement, Hopkins was to provide financing to HPDC and the Bullocks for the acquisition of real property and construction of a golf course. HPGC, HPDC, and the Bullocks executed a promissory note on August 14, 2006, in the amount of $12,430,000, and the note was secured by a deed of trust, recorded on August 14, 2006. A second note was executed by HPGC, HPDC, and the Bullocks in May 2007 for the principal sum of $407,500, and this note was secured by a separate deed of trust, recorded in June 2007.

Several months prior to entering the master credit agreement with Hopkins, HPGC executed a contract with LU for the "[c]onstruction of all project components for an eighteen hole golf course and practice range." Under the contract, LU would be responsible for thirteen components, including: (1) mobilization ($46,000); (2) layout and staking ($30,500); (3) erosion control ($18,500); (4) clearing ($0); (5) earthwork ($235,000); (6) shaping ($335,000); (7)

2

drainage ($217,227); (8) features construction, such as tees, greens, sand, piping, irrigation, and bunkers ($813,331); (9) seedbed preparation ($321,080); (10) grassing ($303,564); (11) hardscape ($839,365); (12) irrigation ($1,237,000); and (13) other/contingency items ($265,000). In all, the total budget for the project was $4,661,567.

In accordance with the contract, LU began work on the project on June 1, 2006, and continued until August 30, 2007. In response to unpaid billings, LU filed a claim of lien on September 26, 2007, for the principal sum of $1,337,637,[1] plus interest in the amount of $18,143.75. The claim provided, "said amounts are due, and owing . . . for golf course construction labor and work done, supervision supplied, and/or materials furnished, in and for that certain improvements of said land located at Hunter's Point Golf Course, Nampa, Canyon County, Idaho, and owned by Hunter's Point Golf Community, LLC, an Idaho limited liability company."

On February 1, 2008, Hopkins filed a complaint in district court seeking to foreclose on its deeds of trust because the borrowers were in default on both promissory notes. Hopkins alleged in the complaint that its interest in the subject properties had priority over LU's lien claim. LU cross-claimed, alleging that its lien claim was superior to Hopkins' deeds of trust because LU began work on the project in June 2006 and Hopkins did not record its first deed of trust until August 14, 2006. Accordingly, LU sought to foreclose its lien with respect to the parcels identified in its lien claim.[2]

LU filed a motion for summary judgment in December 2008 regarding the validity, superiority, and amount of its lien claim. Hopkins responded that LU's lien, even if valid, did not have priority over Hopkins' interest because LU failed to designate what portions of its lien amount are attributed to each parcel or improvement pursuant to I.C. § 45-508. LU countered that a single lien claim could be filed, without segregating the amount, when the labor is provided pursuant to a single contract and the work provided amounts to a single improvement. The district court orally ruled on March 12, 2009, that LU's lien claim on the four parcels at issue was superior to Hopkins' interest pursuant to I.C. § 45-506 (the March 2009 Order).

---

[1] This amount represents three unpaid billings: (1) a June 25, 2007 bill for $483,817; (2) a July 25, 2007 bill for $296,073; and (3) an August 30, 2007 bill for $557,747.

[2] Although LU initially claimed eleven parcels subject to its lien, it later narrowed its claim to six parcels, two of which the district court later ruled were extinguished or junior to Hopkins' deed of trust. LU concurred with this ruling; thus, only four parcels are at issue on appeal.

However, the court reserved the issue of apportionment, which was separately raised in Hopkins' summary judgment briefing, for a later ruling.

At the subsequent apportionment hearing on July 7, 2009, the court rescinded its March 2009 Order and determined that LU was not exempt from meeting the requirements of I.C. § 45-508 (the July 2009 Order). The court interpreted I.C. § 45-508 as requiring LU to designate its lien amount as to each parcel encumbered by the lien, and its failure to do so resulted in its lien being postponed to Hopkins' deed of trust. Alternatively, the district court held that if it misapplied I.C. § 45-508, LU's lien would be equitably apportioned by acreage among the parcels covering the golf course. Specifically, the court endorsed Hopkins' apportionment theory, which provided: (1) 29.99% of LU's lien, in the amount of $401,206.91, for parcel 3; (2) 16.72% of LU's lien, in the amount of $223,717.63, for parcel 1; (3) 13.21% of LU's lien, in the amount of $176,647.38, for parcel 16; and (4) 11.34% of LU's lien, in the amount of $151,696.32, for parcel 10.

LU filed a motion for reconsideration regarding (1) the postponement of its lien pursuant to I.C. § 45-508, and (2) the alternative ruling of apportionment by acreage. With its motion, LU submitted an additional affidavit to support its theory that genuine issues of material fact exist as to the apportionment issue. The court determined there was no new evidence presented regarding the arguments before it and denied LU's motion. Consequently, LU appealed to this Court seeking a reversal of the July 2009 Order, a reinstatement of the March 2009 Order, and a remand for trial to determine the breakdown of its lien on each golf course parcel.

## II.
## ISSUES ON APPEAL

I.  Does I.C. § 45-508 apply to LU's lien such that its failure to designate the amount of its lien as to each parcel results in the lien being postponed to Hopkins' deeds of trust?

II.  Did the district court err in alternatively holding that LU's lien should be equitably apportioned by acreage?

III.  Is LU entitled to attorney fees on appeal pursuant to either I.C. §§ 12-120(3) or 12-121?

4

## DISCUSSION

### A. Standard of Review

"This Court reviews a motion for summary judgment pursuant to the same standards as the district court. *Mackay v. Four Rivers Packing Co.*, 145 Idaho 408, 410, 179 P.3d 1064, 1066 (2008). Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." I.R.C.P. 56(c). "[A]ll reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party," and disputed facts will be liberally construed in favor of the nonmoving party. *Mackay*, 145 Idaho at 410, 179 P.3d at 1066. "Summary judgment is appropriate where the nonmoving party bearing the burden of proof fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* This Court exercises free review over questions of law. *Martin v. Camas County ex rel. Bd. of Comm'rs,* 150 Idaho 508, 511, 248 P.3d 1243, 1246 (2011).

### B. I.C. § 45-508 Does Not Apply to LU's Lien

The district court held that I.C. § 45-508 required LU to segregate its lien as to each parcel, reasoning that because LU's lien encumbered multiple parcels, there were multiple improvements at issue. LU argues that the district court's application of section 508 is in error because LU's lien only covers a single improvement, the completed golf course, whereas section 508 applies to liens covering multiple buildings or improvements. LU further argues that it was inappropriate for the district court to equate "improvements" with "parcels" because section 508 does not provide for such an application and because an "improvement" is given a distinct meaning in the statute. Hopkins responds that the district court properly applied section 508, by requiring that LU segregate its lien amount as to each parcel, because the improvements were made to the land itself and can therefore be viewed in terms of each parcel. Alternatively, Hopkins argues that the golf course and driving range are comprised of multiple improvements, such as individual fairways, holes, and greens, which require designation of the lien amount as to each individual improvement.

The purpose of Idaho's mechanics' and materialmen's lien statutes, Chapter 5, Title 45, Idaho Code, ("lien law") is to compensate persons who perform labor and provide materials for

improvements to or upon real property. *See generally BMC West Corp. v. Horkley*, 144 Idaho 890, 893–94, 174 P.3d 399, 402–03 (2007). In Idaho, "[m]aterialman's lien laws are construed liberally in favor of the person who performs labor upon or furnishes materials to be used in the construction of a building." *Id.* (internal quotation omitted). Indeed, such a right is grounded in Idaho's Constitution, which provides that "[t]he legislature shall provide by proper legislation for giving to mechanics, laborers, and material men an adequate lien on the subject matter of their labor." IDAHO CONST. art. XIII, § 6.

"Where the language of a statute is clear and unambiguous, statutory construction is unnecessary, and this Court need only determine the application of the words to the facts of the case." *L & W Supply Corp. v. Chartrand Family Trust*, 136 Idaho 738, 743, 40 P.3d 96, 101 (2002). Only where a statute is "capable of more than one conflicting construction" is it said to be ambiguous and invoke the rules of statutory construction. *Id.* "Therefore, the interpretation should begin with an examination of the literal words of the statute, and this language should be given its plain, obvious, and rational meaning." *Id.*

The statute at issue, I.C. § 45-508, provides that a lien claimant may file a single lien against multiple improvements, when they are owned by the same person:

> In every case in which *one (1) claim is filed against two (2) or more buildings, mines, mining claims, or other improvements*, owned by the same person, the person filing such claim must, at the same time, designate the amount due him on each of said buildings, mines, mining claims, or other improvement; otherwise the lien of such claim is postponed to other liens. The lien of such claim does not extend beyond the amount designated as against other creditors having liens by judgment, mortgage, or otherwise, upon either of such buildings, or other improvements, or upon the land upon which the same are situated.

I.C. § 45-508 (emphasis added). In other words, section 508 provides a lien claimant the benefit of filing a single lien covering multiple improvements under common ownership, but, in order to maintain priority, the lien claimant must designate the amount owing as to each improvement.

Although "improvement" is not specifically defined in the lien law, such law has historically differentiated between improvements made on the land, such as buildings and structures, and work done to improve the land, itself, such as grading, filling in, and leveling. The section of the lien law that established basic lien rights, I.C. § 45-501, clearly demonstrates this distinction. The section provides in pertinent part:

6

> Every person performing labor upon, or furnishing materials to be used in the construction, alteration or repair of any mining claim, building . . . or any other structure, <u>or who</u> grades, fills in, levels, surfaces or otherwise improves any land, . . . has a lien upon the same for the work or labor done . . . or materials furnished . . .

I.C. § 45-501 (emphasis added). It is obvious that the section creates two distinct types of liens—a lien against some form of structure, alternately referred to in later sections of the lien law as an "improvement," and a lien created in favor of one who improves the land, itself, by grading, leveling, and the like. This is true because of the use of the disjunctive "or." A person making the first type of improvement "has a lien upon the same," i.e., the improvement itself. On the other hand, a person who improves any land by grading, filling or leveling, obtains a lien against "the same," meaning the land.

As written, section 501 does not grant a person performing work on a structure any lien rights against the land upon which the structure is built. This would present an awkward situation where the lien holder attempts to realize upon his lien rights in a foreclosure action because, without an interest in the land upon which the structure sits, it might be difficult to realize an adequate price at an execution sale. The Territorial Legislature appears to have recognized this difficulty and responded with Section 5128 of the 1887 Statutes [now I.C. § 45-505], which allows a mechanic or materialman to obtain a lien upon the "land upon which . . . any building, improvement or structure is constructed, together with a convenient space about the same, or so much as may be required for the convenient use and occupation thereof . . . ." This Court recognized the interrelationship between sections 501 and 505 in *Chief Industries, Inc. v. Schwendiman*, 99 Idaho 682, 686-87, 587 P.2d 823, 827-28 (1978), wherein we stated:

> I.C. § 45-501 grants a right of lien to a materialman or laborer against a building, structure or other improvement. I.C. § 45-505 also grants a lien upon the land upon which such a building or structure is situated. I.C. §§ 45-501 & -505 must be construed in *pari materia.*

The Court went on to say that an improvement constructed on the land pursuant to section 501 is a prerequisite to obtaining a lien against the underlying land under section 505:

> Idaho's materialmen's lien statutes appear to have been adopted from those of California. The California courts have repeatedly held that under their statutes the lien upon the building or structure is the primary thing and the lien upon the land a mere incident to it. We concur in such construction. The land upon which a lien may be asserted under I.C. § 45-505 is expressly referenced to and made

7

dependent upon the location of the building, structure or improvement. Therefore, a lien may not be acquired against the land if one cannot be acquired against the building, structure or other improvement.

*Id.* at 687, 587 P.2d at 828 (internal citations omitted).

Of interest is the fact that I.C. § 45-501, as enacted in 1887, prior to statehood, did not provide for a lien against land that was graded, filled in, leveled, surfaced, or otherwise improved. 1887 Statutes, section 5125. The lien for the second type of improvement—to the land, itself—was not enacted until 1951. Chapter 199, Section 1 of the 1951 Idaho Session Laws added the language "or who grades, fills in, levels, surfaces or otherwise improves any land," to section 501. This made it clear that a person could obtain a lien for making improvements to the land, itself, regardless of whether it was located within the limits of an incorporated city or town. The 1887 Statutes did provide for a lien against land, itself—"any lot in any incorporated city or town"—where a person "grades, fills in, or otherwise improves the same." 1887 Statutes, section 5127. That section has continued in effect in essentially the same form since that time and is currently designated as I.C. § 45-504.

The distinction between the two types of liens is also recognized in the last sentence of section 508, which provides, "the lien of such claim does not extend beyond the amount designated . . . upon either of such buildings, or other improvements, or upon the land upon which the same are situated." This language recognizes that the designation or segregation requirement applies to buildings or other improvements and, only as a "mere incident," to the underlying land. *See Chief Industries*, 99 Idaho at 687, 587 P.2d at 828. The building or other improvement lien is obtained under section 501, and the incidental lien upon the land on which the building or improvement is located is obtained under section 505. Section 508 does not deal with the situation where the second type of lien is obtained under section 501 or where a lien is obtained under section 504.

As noted in *Chief Industries*, this Court has looked to California cases for guidance regarding the interpretation of Idaho's lien law. *See also BMC West Corp. v. Horkley*, 144 Idaho 890, 896, 174 P.3d 399, 405 (2007). In *Warren v. Hopkins*, 42 P. 986 (Cal. 1895), the California Supreme Court dealt with a situation almost identical to that in this case:

It is contended by the appellant that the notice of lien filed in behalf of the plaintiffs is defective, for the reason that the contract for grading embraces two blocks of land, and that under section 1188, Code Civ. Proc. [I.C. § 45-508], the

8

claim of lien should have specified the amount due to them upon each block. The lien which is claimed by the plaintiffs is, however, authorized by section 1191 Code Civ. Proc. [I.C. § 45-504], and not that which is authorized by section 1183 [I.C. § 45-505]. Section 1191 gives to the contractor a lien upon the "lot" for his work done, while section 1183 gives him a lien upon the "building or other improvement." . . . "The buildings, mining claim or other improvements" named in section 1188 have the same significance as in section 1183; and the clause in section 1191 giving to the contractor a lien upon the "lot" which he grades or fills, or "otherwise improves," refers to some improvement of the "lot" upon which the lien is given, rather than to the "improvements" upon the lot referred to in section 1188.

*Id.* at 987. Thus, "improvement," as used in section 508, does not encompass the improvement of a lot within the meaning of section 504.

There can be no doubt that LU's lien is the second type provided for in section 501. LU was not engaged to build structures or buildings on the property but, rather, was required to level, fill, berm, contour, and otherwise improve land in order to complete a golf course. LU's work is also encompassed within section 504. That is, LU's work consisted of grading, filling in, and otherwise improving the land. The land was located in an incorporated city or town, as disclosed in Hopkins' deed of trust: "Grantor acknowledges that the Property is located within the incorporated city limits of the City of Nampa, Idaho." While Hopkins might quibble with characterization of the golf course parcels as "lots," it appears that the statute is broad enough to cover any type of subdivided land parcel within its coverage. The golf course parcels are all designated as parcels of the subdivision plat, and it appears from the deed of trust that they are all located within the city limits. In *Warren*, the California Supreme Court had no difficulty in including two city blocks within the coverage of section 1191, the counterpart of section 504. *Id.* at 987-88. That is, the blocks were considered as lots within the meaning of section 504's counterpart.

Even if we were to accept Hopkins' premise that LU's work on the land constituted an improvement within the meaning of section 508, such work did not constitute multiple improvements as required to trigger the designation requirement of section 508. LU's work was done pursuant to a single contract, and the labor and materials provided were for the benefit of the entire golf course and driving range, rather than for the individual improvements making up the golf course. Therefore, the golf course project is more properly characterized as a single improvement.

9

Analogously, we have held in the past that even where multiple mining claims are at issue, a lien will not be invalidated for failure to adequately describe the property encumbered when it identifies the claims as a single mine. For example, in *Phillips v. Salmon River Mining and Dev. Co.*, the owner of a mine composed of three placer mining claims, challenged the validity of a lien claim when the lien claimant described the property to be liened as the Salem Bar Mine, without identifying the individual mining claims making up the larger mine. 9 Idaho 149, 72 P. 886, 886 (1903). This Court held that the multiple claims were sufficiently described to avoid invalidation, reasoning that the claims were always referred to as a single mine, work and materials were billed to the Salem Bar Mine generally, and the work performed by the claimant was performed under a single contract identifying the Salem Bar Mine. *Id.*

Although *Phillips* addressed a request to invalidate a lien for failure to properly describe the encumbered property, we extend its reasoning to the case at hand. We find it practical and functional to treat all work on a single project, for a single owner, and under a single contract, as a single improvement for purposes of section 508. Like the lien claimant in *Phillips,* LU designated the Hunter's Point Golf Course as the single improvement being created and encumbered, rather than the individual components making up that final project. Specifically, LU filed a single lien claim "for golf course construction labor and work done, supervision supplied, and/or materials furnished, in and for that certain improvements of said land located at *Hunter's Point Golf Course*, Nampa, Canyon County, Idaho . . . ." (emphasis added). Indeed, like in *Phillips*, the billing statements identified the "project" as the "Hunter's Point Golf & Country Club." In other words, the project was not known as the thirteen individual components originally identified in the attachment to the agreement, such as mobilization, layout, and erosion control. Rather, the project was known by its singular and final nature, to wit, the Hunter's Point Golf Course. Nothing in the record indicates that either LU's work or the compensation it was to receive for the work was divided up based upon geography.

Once again, the closely aligned *Warren* case provides guidance:

> While section 1188 [section 508] requires the claimant who files a lien against two or more buildings, or other improvements, to designate the specific amount for which he claims a lien upon each of such improvements, it does not require him to make such designation unless there is in fact a specific "amount due to him" on each of such improvements; and it might frequently happen that a contractor would construct several buildings under one contract, and there would not be any specific amount due to him on each of such buildings. In the present

10

case the plaintiffs made a single contract for the grading of the two blocks at a fixed price, and, as it appears that the character of the two blocks was such that the earth taken from one was to be used in filling up the other, and that the compensation for the entire work was fixed at "ten cents per cubic yard for filling," it is evident that there could be no separate amount chargeable against either block; and that, while the grading had the effect to improve the land, it did not constitute such "improvements" to the different blocks as are contemplated in section 1188, or for which separate liens were authorized.

*Id.* at 987-88.

Similarly, the work at issue in this case was governed by a single contract and billed on a project-wide basis. HPGC executed a contract with LU for the "[c]onstruction of all project components for an eighteen-hole golf course and practice range." There were not separate contracts created for each of the eighteen holes, and there was no separate contract for the driving range. Instead, the parties entered into a single contract for the construction of one final product and, accordingly, anticipated payment for that product as a whole. Therefore, Hunter's Point Golf Course is appropriately characterized as a single improvement such that the segregation principles of section 508 would not apply.

In sum, the district court incorrectly applied I.C. § 45-508 to LU's lien claim, and its ruling on that issue is therefore vacated.

### C. Equitable Apportionment

The district court ruled that even if I.C. § 45-508 did not apply to subordinate LU's lien to Hopkins' deeds of trust, equitable apportionment would be an appropriate remedy. LU argues that apportionment should not apply here because there is no basis in Idaho law for such a remedy. LU further argues that, even if apportionment is appropriate, summary judgment should not have been granted because there are genuine issues of material fact in dispute regarding the apportionment amounts, and equitable apportionment should only be applied as a last resort if LU is unable to determine those amounts. Hopkins argues that equitable apportionment as to the acreage of each parcel is an appropriate alternative remedy because LU should not be able to foreclose its entire lien amount against any one of the four properties at issue. Additionally, Hopkins argues that LU's additional evidence regarding material issues of fact on this issue is untimely because LU failed to present that evidence at the time of its original summary judgment motion. Finally, Hopkins argues that the district court properly denied LU's request for

11

reconsideration on the issue of apportionment because LU failed to provide the apportionment evidence at the time of its summary judgment motion and briefing.

We need not address whether there were material issues of fact regarding apportionment or whether LU's request for reconsideration was properly denied because we find that equitable apportionment is not an appropriate remedy here. Apportionment of a lien is only required by statute if the lien claim falls within the ambit of section 508. Permitting apportionment under other circumstances would undermine the direct mandate for apportionment only in the particular circumstances outlined by the Legislature in section 508, none of which apply to the facts of this case. Additionally, such a construction would not comport with the liberal construction rules of Idaho's materialman statutes, which are to be construed in favor of the lien claimant. *See BMC West Corp. v. Horkley*, 144 Idaho 890, 893-94, 174 P.3d 399, 402-03 (2007). Finally, apportionment would not be practical in this case because there was only a single contract governing the project and, as discussed above, there was never any segregation of the billings as to each parcel encumbered by the lien. *See Addington-Beaman Lumber Co., Inc. v. Lincoln Sav. & Loan Ass'n*, 403 S.E.2d 688, 689 (Va. 1991) (taking the approach that allocation is only appropriate where billings were made on an individual lot basis rather than pursuant to a single contract on a project-wide basis). *See also S. Cal. Lumber Co. v. Peters*, 86 P. 816, 816 (Cal. App. 2d Dist. 1906) (Lumber delivered under a single contract and used against multiple buildings could not be practically apportioned. "[W]ithout anything to show how much of it was used in each building, it was impossible to 'designate the amount due to him on each of such buildings.' Indeed, under such circumstances, there was nothing due him on each of the buildings. His claim existed against the buildings jointly and not otherwise.") The district court's alternate equitable apportionment holding is therefore vacated.

## D. Attorney Fees

LU argues that it is entitled to attorney fees on appeal pursuant to either I.C. §§ 12-120(3) or 12-121. Hopkins argues attorney fees would be inappropriate under both sections because this is not a commercial transaction under section 120(3), and because the claim at issue is not frivolous under section 121.

Attorney fees for LU under section 120(3) are inappropriate in this case because there was no commercial transaction between Hopkins and LU. In *BECO Const. Co., Inc. v. J-U-B Eng'rs, Inc.*, this Court held that section 120(3) did not apply to the transaction at issue in that

case because "the transaction was between the City and BECO and not between J-U-B and BECO." 145 Idaho 719, 726, 184 P.3d 844, 851 (2008). Similarly, there was a transaction between LU and HPGC, and a separate transaction between HPGC and Hopkins, but there was no transaction between LU and Hopkins. Therefore, attorney fees under section 120(3) would be inappropriate.

Attorney fees under section 121 are appropriate only where the Court finds the appeal "was brought, pursued or defended frivolously, unreasonably or without foundation . . . ." I.R.C.P. 54(e)(1). Because the district court found in favor of Hopkins, and because Hopkins provided a reasoned basis in law for such arguments, we also decline to award attorney fees on appeal to LU under this provision.

## IV.
## CONCLUSION

For the foregoing reasons, we hold that the district court erred in applying I.C. § 45-508 to postpone LU's lien claim and, alternatively, in equitably apportioning LU's lien amount. Accordingly, the judgment of the district court is vacated and the case is remanded for further proceedings consistent with this opinion. Costs on appeal are awarded to LU.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.