779 P.2d 409

**John J. CAMPAGNA, Jr., and Annacha C. Campagna, husband and wife, Plaintiffs–Appellants,**

v.

**Fred E. PARKER, Defendant–Respondent.**

**No. 17745.**

Supreme Court of Idaho.

Aug. 28, 1989.

E. Lee Schlender, Chartered, Hailey, for plaintiffs-appellants.

Webb, Burton, Carlson, Pedersen & Webb, Twin Falls, for defendant-respondent. Lloyd J. Webb argued.

BAKES, Chief Justice.

This is an appeal from an order granting summary judgment to the vendor, Parker, in a real estate transaction with John and Annacha Campagna. At issue is the question of interpretation of the warranty of title in the contract of sale and deed. Appellant-buyers, John J. and Annacha C. Campagna, purchased a 31.5 acre Blaine County tract known as the Silver Bell Ranch from Parker. Some time after the sale was consummated, Blaine County was the prevailing party in an action to declare a public roadway easement across the northwest corner of the Campagna property. *See Blaine County v. Bryson*, Blaine County Civil No. 11423; *Blaine County v. Bryson*, 109 Idaho 123, 705 P.2d 1078 (Ct. App.1985). As the result of the judgment in that action, the Campagnas sued Parker, alleging a breach of the seller warranties of title as contained in the contract of sale and deed. The district court found that Parker's warranties of title were specifically limited by the contract to exclude unrecorded encumbrances caused by the seller, and accordingly, granted summary judgment for defendant.

The factual record discloses that an inspection of the property took place by Fred E. Parker and John Campagna prior to the time of sale. The two men met at the ranch property and discussed, among other things, the roadway in question which was later adjudicated to be subject to a public easement. At the time of that meeting, the roadway connected a main public thoroughfare to a long since washed out bridge spanning the Big Wood River, and was distinguishable and marked by a pole fence running parallel to it.

Each party has filed an affidavit recounting their version of the conversation during the inspection. Each account differs as to the nature and extent of Parker's representations that day. For instance, Campagna attests that:

... the defendant Fred E. Parker did not identify the roadway as a public road, easement or other encumbrance whatsoever on the real property being purchased, but to the contrary, indicated and advised that the roadway, was privately his, was subject to his control and, in fact, was not a public easement or right-of-way whatsoever.

R., p. 94, Affidavit of John J. Campagna.

In contrast, Parker, although believing at the time that the roadway was private for lack of any known public use, alleged that his representation was limited to:

"This is a road and it's been here all the time." There was other discussion about the roadway and where it went. The affiant advised John J. Campagna, Jr., that, until the bridge across the Big Wood River at the west end of the road was washed away, the road had served a mine and mining properties on the west side of the river.

R., p. 42, Affidavit of Fred E. Parker.

Subsequent to that conversation, the parties executed a purchase contract which, without any mention of a possible public easement in the roadway, conveyed

... all of that certain real property located in Blaine County, state of Idaho, generally known as SILVER BELL RANCH, consisting of 31.5 acres, more or less, located on the Broadford Road, more particularly set out in that certain legal description attached hereto and incorporated herein by reference, identified as exhibit A, ...

R., p. 47, Contract, p. 1, ¶ 1.

■ The warranty of title in paragraph 11 of the Contract tied the seller's warranties to those "set forth in Schedule B, Sec. 2 of an appropriate commitment for title insurance." Specifically, paragraph 11 stated:

11. *Conveyance.* The Seller shall forthwith, upon the execution of this contract, execute, acknowledge and deliver to the escrow holder Warranty Deed as above stated, conveying the real estate above described to the Buyers. *The Deed shall be free and clear of all liens and encumbrances excepting only easements and exceptions as set forth in Schedule B, Section 2 of an appropriate commitment for title insurance dated as of closing,* except with respect to the matter of taxes which are governed by the terms set forth in this contract. All other exceptions shall be cured by the Seller following the execution and delivery of this contract. (Emphasis added.)

R., pp. 53–54.

However, the form of commitment for title insurance contained in the record does not have a "Schedule B, Section 2" as such. Rather, the commitment issued by Lawyers Title Insurance Corporation reads as follows:

## STANDARD COVERAGE POLICY

### SCHEDULE B

This policy does not insure against loss or damage by the reason of the following:

## PART I

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.

3. Easements, claims of easement or encumbrances which are not shown by the public records.

4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5. Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.

## PART II

1. No liability is assumed for possible unfiled Mechanics' or Materialmen's liens.

2. The Taxes for 1981, a lien but not yet due and payable and the Taxes for all subsequent years.

3. Easements as reflected on Warranty Deed from Jennie W. Stumbo, the surviving widow and sole heir of Harry K. Stumbo, deceased, to Paul James Hurn and Marjorie Eleanor Hurn, husband and wife, dated December 29, 1947, recorded March 2, 1948, in Book 158 of Deeds, page 332, records of Blaine County, Idaho, reciting: "Subject to easement for water reservoir site as same now exists, also subject to easements for ditches, canals, and public roads, as same may now exist on, over and across said tracts."

4. Power Line Easement from A.D. Granden and Elsie Granden, his wife, to Idaho Power Company, dated October 6, 1948, recorded April 23, 1949, in Book 159 of Deeds, page 124, records of Blaine County, Idaho, granting right-of-way and easement over and across the SW¼SW¼ of Section 15, Tp. 2 N., R. 18 E., B.M., for the purpose of erecting and maintaining electric transmission, distribution and telephone lines and circuits.

5. Unrecorded Contract of Sale from Fred E. Parker, a single man, to John J. Campagna, Jr. and Anncha C. Campagna, husband and wife, dated May 18, 1981.

6. Defects, liens or encumbrances, created or suffered by Fred E. Parker and unrecorded at the date hereof and loss or damage sustained by any Insured hereunder resulting from the inability of the Company to provide defense against an adverse claim of which such Insured receives no notice, because such Insured's estate or interest in the land is evidenced by the unrecorded instruments.

It is unclear whether the title insurance commitment form, "Schedule B, Section 2," as used in paragraph 11 of the contract of sale, refers to Section 2 under Part I, or whether it refers to the entire Part II. The trial court apparently determined that "Schedule B, Section 2" referred to Schedule B, Part II of the title insurance commitment form. The district court then concluded that exception No. 6 in Part II of Schedule B was the exception referred to in paragraph 11 of the contract of sale.[1]

1. The district court stated:
Nothing indicates that defendant and plaintiffs did not negotiate at arms length. Defendant successfully negotiated, and specifically reserved, the warranty exceptions contained in Schedule B, section 2, including exception

6. The contract specifically states that defendant's warranty deed "shall be free and clear of all liens and encumbrances *excepting only easements and exceptions as set forth in Schedule B, section 2.*" (Original emphasis.)

Then, after noting that "[e]xception 6 specifically excludes '[d]efects, liens, or encumbrances, created or suffered by [defendant] and then unrecorded at the date hereof,'" the district court concluded that "Blaine County's public easement is an encumbrance created, or suffered to be created, by defendant that was unrecorded on May 18, 1981." Accordingly, the district court concluded that defendant's warranty did not extend to Blaine County's unrecorded encumbrance, and that such encumbrance did not constitute a breach of contract or warranty deed by defendant. The district court entered summary judgment for Parker.

When interpretation of the terms of a contract is called into question, as it is here, summary judgment is appropriate only when the court finds the contract language to be unambiguous as a matter of law. *Delancey v. Delancey*, 110 Idaho 63, 65, 714 P.2d 32, 34 (1986); *Pocatello Industrial Park v. Steel West, Inc.*, 101 Idaho 783, 621 P.2d 399 (1980). If relevant terms are ambiguous, the resolution of the meaning of those ambiguous terms becomes one for determination by the finder of fact, and summary judgment must be denied if there are disputed issues of fact regarding the meaning of the ambiguous contract language. *Delancey, id.* at 65, 714 P.2d at 34; *Woodvine v. Triangle Dairy, Inc.*, 106 Idaho 716, 722, 682 P.2d 1263, 1269 (1984).

After reviewing the sale documents, the language of the title insurance commitment form, and the briefs and argument of the parties, we conclude that the trial court erred in concluding that the documents unambiguously exclude the county's roadway easement from the seller's warranty that "the deed shall be free and clear of all liens and encumbrances excepting only easements and exceptions as set forth in Schedule B, Section II of an appropriate commitment for title insurance." First, it is unclear whether "Schedule B, Section 2" means "Schedule B, Part II, No. 6 of the title insurance commitment form. It is arguable that it refers to Schedule B, Part I, No. 2. Under Schedule B, Part I, No. 2, a substantial issue of fact exists over what was demonstrated by a "inspection of said

land or by making inquiry of persons in possession thereof."

Another paragraph of the contract is relevant in determining the parties' intent with regard to condition of the title to be conveyed to the Campagnas by Parker. Paragraph 12 of the contract reads as follows:

12. *Title Insurance*. Forthwith following the execution of this contract, upon the funding of all down payment amounts as heretofore set forth, Seller shall purchase a policy of title insurance from Sawtooth Title Company, Inc., pursuant to appropriate title commitment. The policy shall be subject to the usual printed exceptions, conditions, and stipulations.

Paragraph 12 provides that the title insurance to be purchased, pursuant to the appropriate title commitment provided for in paragraph 11, "shall be subject to the usual *printed* exceptions, conditions and stipulations." (Emphasis added.) Since the exceptions contained in Part II of the title commitment are typewritten, not printed, and appear to be, for the most part, specific to this particular property, and not general "usual printed exceptions," as are those contained in Part I, it would appear from reading paragraphs 11 and 12 of the contract together, that the encumbrances excepted "as set forth in Schedule B, § 2 of an appropriate commitment for title insurance" would refer to Schedule B, part I, ¶ 2, rather than Schedule B, part II, ¶ 6, as the trial court concluded. In any event, the reference is ambiguous, and therefore raises a factual issue which was inappropriate for resolving at the summary judgment stage.

Assuming, however, as the trial court did, that "Schedule B, Section 2 of an appropriate commitment for title insurance" refers to Schedule B, Part II, No. 6 of the title insurance commitment form in the record, we, nevertheless, still conclude that the trial court erred in granting summary judgment. The district court held that Schedule B, Part II, No. 6 of the title insurance policy excluded the county road easement because it excluded "defects,

liens or encumbrances, *created or suffered* by Fred E. Parker and unrecorded at the date hereof...." (Emphasis added.) However, there was substantial evidence in the record that the public roadway easement in question existed from before the turn of the century, long before Fred E. Parker had acquired the property. The exclusion relied on by the trial court only excluded a "defect, lien or encumbrance, *created or suffered* by Fred E. Parker." (Emphasis added.) It is certainly unclear whether an exclusion for any encumbrance created or suffered by Fred E. Parker would include an encumbrance which was created long before Fred E. Parker ever acquired the property. Viewing the record as a whole, we conclude that there were triable issues of fact over whether the public roadway easement in question was excluded from the warranty of title contained in paragraph 11 of the contract and the deed executed by the parties. Accordingly, the trial court erred in granting summary judgment.

▇ Respondent Parker argues, alternatively, that under the prior decision of this Court in *Hunt v. Bremer*, 47 Idaho 490, 276 P. 964 (1929), a public road right-of-way is not an encumbrance in violation of a contract warranty of title provision, as a matter of law. In *Hunt v. Bremer* this Court held that an encumbrance on land in favor of a canal company for a ditch right-of-way, together with a lien for an annual maintenance charge, was not an encumbrance which violated a warranty to convey property free and clear of encumbrances. The Court stated:

It is apparent that if an incumbrance is a right or interest which diminishes the value of the land, no easement or other right should be regarded as an incumbrance which is essential to its enjoyment and by which its value is enhanced. The modern trend, now firmly established, is that the existence of certain public easements, or easements beneficially affecting the land, such as a public road right of way (*Newmyer v. Roush*, 21 Ida. 106, Ann.Cas. 1913D, 433, 120 Pac. 464 [1912]) or canal (*Schurger v.*

*Moorman*, 20 Ida. 97, Ann.Cas. 1912D, 1114, 117 Pac. 122, 36 L.R.A., N.S., 313 [1911]), do not constitute incumbrances within the meaning of covenants against incumbrances.

47 Idaho at 494, 276 P. 964.

The Court then explained its holding by stating that a water right, together with the appropriate encumbrance and annual maintenance charge,

... in the vicinity of Jerome [Idaho] is notoriously essential and necessary for the cultivation and occupancy of land. A water right is a valuable adjunct and complement of the land and enhances its value. That all irrigation projects must be maintained by the payment of the cost of delivery of water, and that this expense is met, under Carey Act projects, by annual assessments and tolls levied as expressly provided by statute is likewise a matter of common knowledge and imputable to the respondents when they contracted to buy these lots. They were charged with knowledge that the company operating this system annually collects these charges and that a lien may be created for failure to pay such assessments. It must be presumed that respondents entered into this contract with these facts in mind, and that it was the intention of all parties to the contract that they should assume this future liability. The fact that, as incident to every water right, there is a continuing duty to pay annual amounts for its protection and use does not depreciate the value of the land with which it is connected. Generally a lien, under a water contract, which may accrue at some future date, because of unpaid maintenance charges is not an incumbrance as defined by statute....

47 Idaho at 495, 276 P. 964.

The Court in *Hunt v. Bremer*, 47 Idaho 490, 276 P. 964 (1929), described its decision as a "rule of reason" based upon the parties' evident intent that where the lien and maintenance charge of the water district was (1) essential to the enjoyment of the real property, and (2) enhanced the value of the real property, then the Court would

conclude that "a fair and reasonable construction of the covenant in question impels us to hold that, in this particular case, there was no such encumbrance as would justify the judgment appealed from [which annulled the contract for breach of warranty of title]."

If the public roadway easement in question here were the only access to the property in question, the encumbrance of that public roadway easement might well fall within the "rule of reason" of the Court in *Hunt v. Bremer,* because it would be (1) essential to the enjoyment of the property by providing access to the property, and (2) would enhance its value. However, on the record in this case at the summary judgment level, there is no such showing. On the contrary, the record demonstrates that there is other public access to the property, and the affidavit of the purchaser Campagna alleges that the public roadway easement across the back of the property is not essential to the use or enjoyment of the property and is substantial diminution in the value of the property. Accordingly, the rule in *Hunt v. Bremer* is not applicable to this case.

The summary judgment entered by the trial court is reversed and the cause remanded for trial on the issues. Costs to appellant; no attorney fees awarded.

BISTLINE and JOHNSON, JJ. concur.

SHEPARD, J. sat but did not participate due to his untimely death.

HUNTLEY, Justice dissenting (dissent written prior to his resignation on August 7, 1989).

I must respectfully dissent from the opinion of Justice Bakes for two reasons. First, it seems to me that if the subject roadway is a public road, it by definition is not an encumbrance under either Subsection 2 of Schedule B, Part I or under Part II, Subsection 6. Secondly, under Schedule B, Part 2, Subsection 6 such an encumbrance to be actionable has to be "created or suffered by Fred E. Parker" and the evidence is clear and undisputed that Fred

Parker had nothing to do with its creation, the roadway having been in existence long before he came upon the scene.

By virtue of the foregoing matters I have written, there is no question of fact for submission to the trier-of-the-fact and accordingly I would affirm the decision of the trial court.